The Honorable Judges of the United States Court of Appeals in and for the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as this court is now sitting. God save the United States and this honorable court. Good morning, ladies and gentlemen. We are conducting this oral argument by phone and sometimes that creates some difficulty in understanding who is talking or who wants to ask a question. So I may intervene during the argument to bring things to a halt and make sure that everyone can hear what everybody else is saying. But with care, this has worked fairly well in our telephonic oral arguments and I hope it will work well today. Our first case of the day is Jaxson v. Saul. Mr. Paul. Good morning and may it please the court. Thomas Pullum for the Commissioner of Social Security. This case involves a challenge to administrative procedures used by the Social Security Administration in response to a massive scheme involving the use of fraudulent evidence. Mr. Pullum, this is Judge Hamilton. Before we go any further, could we talk about a bit of a problem and also a potentially serious jurisdictional problem? Our circuit rule 30 requires the appellant to submit bound with the main brief an appendix containing the judgment or order under review and I don't find the judgment in your appendix. And when I have the judgment, then it poses some problems. Okay, I apologize for the oversight in putting it in, not putting it in the appendix, I apologize. Well, have you looked at the judgment recently? Um, no, I can't say recently that I have, but I will get it right now. That would be a good idea, because it is at least confusing, whether it's a final judgment, or a preferred final judgment is open for debate. Okay, hold on one second, please. I apologize, I'm sorry, I don't, it's going to take me a minute to find the judgment. Well, perhaps you shouldn't take extra time. The problem is, besides the fact that this document is not where it's supposed to be, that the document is not self-contained. Let me read you part of it. And I quote, plaintiff's motion 24 is granted in part and denied in part. Defendant's motion 10 is granted in part and denied in part. What in the world does that mean? Judgments are supposed to provide the relief to which the prevailing party is entitled. And I can't figure out what the relief is, because the judgment doesn't say. Well, I believe the relief here was a remand to the Social Security Administration. You answer the question. Counsel, let's think about the option about what it's to do. It could be remanded to award benefits. It could be remanded to consider Dr. Hufnagel's opinion. It could be remanded with instructions to the agency to consider argument on the question whether there is reason to believe that Hufnagel's opinion is tainted by fraud. It could be. Well, I think you could fill in a long list of could-bes. But the judgment doesn't say which it is. Well, I believe my understanding of what the district court did here was hold that the Social Security Administration had not provided sufficient process to Mr. Jackson. Counsel, the judgment must be self-contained. You can't tell anything from looking at this document. But what does it mean, hasn't provided sufficient process? Does it mean that the agency must consider Dr. Hufnagel's opinion? Does it mean that the two statutes are declared unconstitutional? Does it mean that reconsideration is impossible or invalid? Judges, we need to know what's at stake here. Well, I believe that what the district court did was say that the process that had been provided was insufficient and the Social Security Administration needed to provide an opportunity for Mr. Jackson to contest adversarially the basis for the Inspector General's determination that there was reason to believe that fraud was involved in the submission of more specific evidence. Counsel, what does that mean? You're trying to interpret an opinion. We're trying to interpret a judgment. I don't even know what it means to say that more process is required. That has to be concrete. It's obvious that you're not thinking about this. Did anybody ask the district court to clarify and enter a proper judgment containing the release? I don't believe so, but the district court did say that it was reversing the Secretary's decision and remanding for further proceedings. That was a remand under Sentence 6 of 42 U.S.C. 405G, I believe. That's a common judgment in Social Security cases to reverse what happened below and remand for the Social Security Administration to do it again. I believe that's what the district court required here. That doesn't really fit with... Go ahead. Counsel, judges require things in judgments, and this judgment is hopelessly ambiguous. It may be that the reason you omitted the judgment is that you think judges require things in opinions. Well, they don't. They require things in judgments. We've got a serious problem here that I think you're not appreciating. I apologize. The omission of the judgment from the appendix was purely inadvertent. The underlying problem, counsel, is that the judgment is hopelessly deficient. It is not something that wraps up the case. I have no idea what most of it means to say Motion X is granted in part and denied in part, period. Do you know what such a thing means? Well, I mean, yes, it was a motion for judgment to reverse the commissioner's determination, so the district court has reversed the determination made before the Social Security Administration. I mean, that's my understanding. What would you like us to do? The most sensible thing to do might be to dismiss the appeal for lot of jurisdictions. Is that what you want us to do? No. We're requesting that this court reverse the district court. Since we don't know what the district court has required and there is no proper judgment, wouldn't that be a little hard? No, because I mean, the district court said it was sending, I mean, by granting the motion, it's sending the case back to the additional proceedings. And we are asking counsel to do which of the things that I mentioned. The district court agreed possibilities at least, and there could be more. And the judgment doesn't choose among them. You know, the standard way to fix problems like this is to ask the district court to enter a judgment only resolving what the relief is and providing the remedy. Don't you think that would be a good idea here? Well, certainly if the court believes that is appropriate, I mean, that's something that could be done. But I believe this was similar to what happened in the Sixth Circuit where the district court did not specify exactly what the agency had to do on remand, nor did the Sixth Circuit. The Sixth Circuit said that the Social Security Administration was required to provide additional process, an opportunity to test the basis for the inspector general's determination. And it sent the case back, leaving open to the agency in the first place exactly how to structure its procedures. So I think this case is similar in that way in that it left open to the agency how to correct the problem. It's not dictating to the agency exactly which procedure it has to adopt on remand. While we're here, I tend to agree we've got a serious jurisdictional problem. We have extensive briefing on the merits. The jurisdictional problem may be fixable. Let's assume for the moment that it is. Could I ask you, Mr. Pullen, the statute, the key statute here, Section 405U, says if there is reason to believe that evidence is a product of fraud without specifying who determines that or by what procedures, do we have anything other than the so-called HALEX annual that tells us that the OIG's referral based on fraud is final? No, the HALEX is where these procedures are set out. The Social Security Administration has not promulgated regulation-specific procedures. Okay, so to the extent there's a constitutional problem, it's with HALEX, not with the statute. Is that right? Yes, I believe that's correct. It's with the manner in which the agency has implemented the statute. So I'd like you to imagine a hypothetical statute. Let's say it's a civil forfeiture statute, recognizing that like the SSA's Office of Inspector General, the Drug Enforcement Agency is stuffed with capable investigators and lawyers. Suppose Congress passes a statute that says that if DEA finds reason to believe that property in the hands of a private individual amounted to proceeds of drug dealing, the property will be forfeited without any opportunity for that owner to dispute the DEA's finding. Would that pose a due process problem in your view? I think that's a very different statute because the DEA's determination that couldn't be challenged there would be the basis for the forfeiture. I don't really see the difference here because the critical factual finding in Mr. Jackson's redetermination proceeding was whether Dr. Hoffnagel's report was a product of fraud. I take it you would agree then that in my hypothetical there would be a huge due process problem. I think there would be a due process problem there. A problem that could not be avoided by Matthews versus Eldridge balancing and cost-benefit analysis because DEA is so reliable and there's really very little chance that the possessor of the money would be able to show that the DEA was wrong. I think there's a couple different things going on here. One, Matthews would still apply. It's just that the balancing might well tilt in a different direction. I mean, this court has applied Matthews in cases where no hearing was provided at all. It's just that that would affect how the balance would shift. The case I'm talking about is Simpson versus Browns County. There was no hearing, right? There was no hearing and the court still applied the Matthews balancing. But I'd like to get it at kind of the core of your honor's question, which was in the hypothetical. The property is forfeited based on the fact that DEA found. Here, the disability determination is not based on anything that the inspector general found. The consequence of the inspector general's determination would be exclusion of a small amount of evidence in the case. That argument, I've got to say, is just completely disingenuous. I mean, I understand the government's outrage at the fraud by Khan and the doctors who worked with him and the ALJ. I understand that, believe me. As a taxpayer, I understand that. But to say this is no big deal in Mr. Jackson's case is ridiculous. It was the decisive evidence. Well, with respect, the only reason that this evidence took on outside the court was because it was part of the fraudulent scheme. Under the scheme, Judge Daugherty would call Mr. Khan, tell him which cases he was going to hear and what type of evidence he needed, physical or medical. And then Khan would have one of his doctors sign this pre-completed form. That would be submitted to SSA. And benefits would be based solely on that without considering any other evidence in the record. So that's the only reason that this evidence was involved. Counsel, counsel, counsel, I understand your point. We are all aware of the broad strokes of the fraudulent scheme here. And believe me, I'll have some questions and my colleagues may also have some questions for plaintiff's side about just how he might intend to dispute the showing or the reason to believe that this was fraudulent. But to try to suggest that this is anything other than dispositive is asking us to just ignore reality. Well, I don't think so, as the fact that over 50% of affected beneficiaries retained their benefits following redetermination. I think that demonstrates that this evidence was not dispositive. It's a question of how the evidence affects Mr. Jackson's case. And so we look at, I think it's important to look at the procedural protections that are in place already and whether there's a serious risk of error caused by these procedures. There were two, as we explained in the brief, two procedural protections that are key here. Excuse me. Mr. Pullman, it's Judge Skelter from the courtroom. I just want to make you aware. I know I didn't want to interrupt the colloquy you were having with Judge Hamilton, but I'm in the courtroom and watching the time, and you're over halfway into your rebuttal. Judge Easterbrook may choose to afford you additional time, given the various questions that we had at the outset. But I just wanted to make you aware of where you're at on the clock. Thank you very much. So I'll wrap this point up very quickly. Counsel. This is really the court's time and not it's not a good use of your time just to recite what's already in your brief. I have a question about what you think is required in an ordinary Social Security case. Forget about redetermination. Suppose there is a dispute about the admissibility of a physician's report. How is that resolved? Would it be proper, for example, for the Social Security Administration to ask an ALJ to exclude the report? And for the ALJ then to say, I am acting on the basis of that ex parte. I refuse to receive a response from the claimant in support of that evidence. Would that be proper as a matter of administrative law? Well, I think it would depend on the Social Security Administration's basis. If it was based on a statute that requires the exclusion of evidence when certain conditions were met and here the conditions were met. Suppose the statute says we are going to exclude all evidence received from a doctor whose license has been suspended by the state regulatory agency. And the agency files a motion saying we contend that X's license has been suspended. Please exclude this evidence. The claimant says we contend that X's license has not been suspended. The ALJ says I refuse to listen to you. I'm only going to listen to the Commissioner's lawyers. Would that be proper as a matter of administrative law? I think under due process principles, we would turn to the Matthews Act. Look, I wish you'd listen to my question and answer what I'm asking. We never start with due process. You start with ordinary principles of administrative law. You get to due process if administrative law requires an outcome and that outcome is said to be unconstitutional. I'm not asking a constitutional question. I'm asking a question about ordinary principles of administrative law. And that question is, can the ALJ grant an ex parte motion to exclude evidence? I think, well, I'm not, I don't think this qualifies as an ex parte motion to give effect to the determination of another government entity. Are you even considering answering my question? I am not asking about trying to shout down a court also doesn't help. I'm not asking about the administration of these statutes. I have asked you a hypothetical question about the exclusion of evidence on the basis that the physician's license has been suspended. What happens in such a case as a matter of ordinary administrative law principles? I think most commonly that would be tested, but I'm not sure of any administrative principle of administrative law. And I don't think the plaintiff's pointed to a general principle that dictates the outcome in this case or in the hypothetical that your honor is describing. Are you seriously contending that it would be proper for an agency to refuse to listen to the claimant on the question whether the physician's license has been suspended? Just to refuse to listen to him at all? I mean, I think in certain circumstances, like the circumstances we have here, I don't. I am not asking about the circumstances we have here. That's why this is called a hypothetical. I mean, perhaps this hypothetical might be different because it's not built into the administrative scheme that governs the process. I'm not trying to fight the hypothetical. I'm just not trying. Judge Easterbrook, the time we're a few minutes into the rebuttal time at this point. I'd like to say something. Perhaps you should save some time and think about where we are in this argument. Ms. Jennings. Yes, your honor.  And may it please the court. If it's all right with you, I'd like to proceed to address the merits on the assumption that you made while you were speaking with Mr. Poems. Don't be fact here. May be terrible, but okay. Ms. Jennings, we need you to talk about the judgment too. Do you think this is a valid judgment? I agree. So I was taking a look at federal rule of civil procedure 58, which tells us that a judgment needs to be set out in a separate document. And this is, in fact, a separate document. And, yes, it does, in fact, cross-reference the judge's opinion. But I do think the judge's opinion gives us some guidance as to what exactly the relief was that the judge intended. Ms. Jennings, does the judgment say a word, for example, about reinstatement of benefits? No, your honor, it does not. It seems like a kind of critical part of the relief that you thought you obtained. Has Mr. Jackson been getting benefits? Yes, he has, your honor. Okay. Whether that's by goodwill of the agency, but it can't be by result of the judgment at this point. I mean, I think it's indicative of the fact that the agency clearly interpreted this judgment as effectuating the writing in the opinion, whether or not it formally said all of the things that were in the opinion. So what do you think are the answers to my questions about what the agency is supposed to do? Is it supposed to award benefits? Is it supposed to hold a brand-new hearing? Is it supposed to offer him an opportunity to contest the reasonable cause finding? And why did you cross-appeal? Yeah, so I can run through all of those. So the district court order says that the case should be remanded to the agency. On that, I agree with opposing counsel. It also says expressly that on remand, Jackson must be given the opportunity to challenge the basis for the commissioner's decision to advance the opening of the court. Counsel, we are asking about the judgment, not about the opinion. I continue to be perplexed that lawyers don't understand the difference between judgments and opinions. The thing under review is the judgment. And we are asking whether the judgment provides any particular relief at all. Then no, Your Honor, it does not provide the particular relief you're asking for. I apologize. You, as a cross-appellant, have the same interest as the government, one would suppose, in having a judgment complying with not only Rule 58, but with the decisions of this circuit saying judgments must be self-contained and must provide the relief to which the prevailing party is entitled. There is also Rule 58b-2, which says that judgments must be reviewed by the judge and approved. There's no evidence that this document was anything other than something whipped up by a deputy clerk and never reviewed by a judge because it's impossible to see how, if this document were reviewed by a judge, it could have been approved. Your Honor, all of that is on the face of this document. I'm not sure I have a response to that. I apologize for the oversight. Why did you cross-appeal? What relief do you want that the judgment did not give you? So, we also cross-appealed because of our claims under the Administrative Procedure Act, specifically our claims that proceedings under Section 405U are— No, please, please, please, please answer the question you were asked. The question you were asked is, what relief do you want that the judgment did not give you? Well, I mean, Your Honor, you just said that if we're focusing on the judgment, the judgment does not say anything about our APA claims, which were the subject of our cross-appeal. No, my question is about relief, not theories, relief. Yes, and the relief that we're seeking under our APA claim is distinct from the relief that we're seeking under our due process or our arbitrary executive claim, because the requirements for formal adjudications under the APA are more robust. So, counsel, please, what relief is that? To be concrete, what relief do you want that you think you do not have? We wanted a remand to the agency with instructions to apply the formal adjudication provisions of the APA. And because those provisions differ from the specific provisions that were indicated by the other— You know, let me put this different. One of the questions that was asked of your adversary concerned how ordinary evidence issues would be resolved in litigation. It doesn't really help to say the APA applies or the APA does not apply. If you're trying to resolve an issue about the admissibility of evidence, either before a court or before an agency, what concrete procedures do you think are required? Surely, I'm assuming you believe that in my hypothetical, it would be necessary to listen to the lawyer for the claimant about whether the doctor's license had been suspended. But do you think that requires a trial-type hearing as a matter of APA law? No, Your Honor, I don't. And I don't think that's a consequence of applying the APA's formal adjudication of requirements here. So, what would applying the APA do concretely as you see it? So, for example, if you look at Section 556E, that's the provision that says where an agency decision rests on official notice of a material fact not appearing in the record, you're entitled to an opportunity to show the contrary. In that situation, you would then be entitled to show that the purported fraud here did not in fact affect my client Tyler Jackson's application for benefit. But that would not— That, of course, isn't the statutory question, as I understand it. But are you arguing for anything more than a right to submit an argument to the agency on the issue in question? Well, again, very slightly, depending on which of our theories you're talking about. Under the APA, there's also a statutory provision that says you're entitled to such cross-examination as may be necessary for full and true disclosure of the facts, and that wouldn't necessarily be implicated by our other two theories. But that is fundamentally what we are asking for here. So, Ms. Jennings, can I ask, what evidence does plaintiff have here to dispute the fraud? Because obviously there are very powerful reasons here to discount anything Dr. Hoffnagel said. But if you get an opportunity to be heard on this question, what evidence would be provided? So the idea is that my client would be able to provide some testimony about what his visit to Dr. Hoffnagel was like, whether or not Dr. Hoffnagel provided him any medical advice or opined on his medical condition during that meeting. Perhaps he'd be able to track down some supported testimony from someone who worked in Dr. Hoffnagel's office at the time, who could say that he came or she saw some of the tests. And I think it's also worth thinking about the nature of some of the evidence that was excluded in these cases. Although OIG's initial referral only referred to the residual functional capacity forms, which are the short checkbox forms. Is any of that evidence that you're talking about, for example, testimony from Mr. Jackson or in the form of an affidavit, is any of that in the record or are we simply trying to decide here in the abstract whether there should be an opportunity to provide it in another hearing? Your Honor, it's not in the record because we weren't permitted to develop this evidence before the agency. I think at least in terms of the due process clause, it's important to remember that the question of whether due process was provided is assessed on the basis of somebody who was erroneously denied benefits, not from the perspective of somebody who was properly denied. Ms. Jennings, it's Judge Scudder. Your answer to Judge Hamilton's question, I want to flip the coin over and ask you, what do you think the scope is of your procedural due process right to get into the OIG investigation? To ask questions about the basis upon which the Inspector General reached a conclusion, to view materials that the Inspector General relied upon, et cetera, et cetera. What we're really talking about here is our ability to tell our side of the story as opposed to dig into what the Inspector General has done. That's the type of due process right that was found to exist in the Honda case, also with Gosper Lopez where the students were expelled. What we're really talking about is the opportunity to tell our side of the story. It is entirely possible that upon seeing our side of the story, the ALJ may not feel like it has enough information to make a determination. The ALJ could then potentially call someone from OIG to provide further explanation, or it may be that OIG wishes to submit additional more specific information about how they reached the broad determination in a particular case. That, I don't think, is a necessary consequence of our due process argument here. You don't envision lodging on remand? You wouldn't envision lodging discovery requests, asking for a right to cross-examine a member of the Inspector General's office who made the findings or contributed to the findings and the like? No, Your Honor, except to the extent that our formal adjudication argument is upheld, in which case, under Section 556D, we're entitled to such cross-examination as necessary for full and true disclosure of the record. We may consider that in that situation. Could I ask you quickly, there's an interesting background problem here about the relationship between the Social Security Act from the 1930s and the Administrative Procedure Act from, I believe, the late 1940s, if memory serves. In an ordinary Social Security disability hearing, what would happen under the Social Security Act if the ALJ called for a testimony from a vocational expert and then refused the claimant's attorney's request to question that same expert? My understanding, and I don't have the specific SFA provision at hand to know this for certain, but my understanding is that that would be a basis to argue that the initial decision was flawed on appeal. Because of the denial of the right to cross-examine, that must have some source, either explicitly or implicitly, within the Social Security Act, right? Yes, I believe that's correct. And I guess I'd just say a word in response to Judge Scudder's point about the nature of the relief we're seeking here. Because I think that's important to keep in mind when you're thinking about how the three Matthews balancing factors come out here. We're talking about a private interest that even the Commissioner has conceded is substantial. We're talking about a situation in which we know there's a real likelihood of a romance determination. And we know that because if, for example, you look at the plaintiffs in the Hicks case in the Sixth Circuit, a number of those plaintiffs lost their benefits despite having passed continuing disability reviews, which are reviews SSA periodically undertakes to ensure that people are still suffering from the disability that initially justified their award of benefits. And notwithstanding the fact that those plaintiffs passed those CDRs, they still lost their benefits. So we know there is a risk of erroneous deprivation here. And then looking at the third Matthews factor, and this is again, Judge Scudder, where your point comes in, is that the burden of the additional procedure we're asking for here are not all that significant. When you think about the delta between the hearing that Jackson got and the hearing that Jackson wanted, we're really talking about the ability to put on some more evidence during that hearing, which may extend the length of the hearing that is already taking place, but would not result in a parade of horribles. Yeah, Ms. Jennings, that's exactly why I asked that question, because I'm curious what Mr. Pullman says. That's what I, at least for my part, I want to ask him to address in his limited rebuttal time, but I just don't see a complete disaster unfolding on remand by allowing Mr. Jackson here to put forward evidence. You know, you've proffered what form it may take, but I don't know why the ALJ wouldn't have broad discretion to prevent a fishing expedition. It doesn't sound like you want to go on one. And to demand that the claimant make an evidentiary-based showing, if he's able to, as to why the Inspector General's determination is in error as applied to him. It sounds like you agree with that. Yes, I do, Your Honor. And then I think the other point that I think you all mentioned earlier is that the evidentiary exclusion here was, in fact, disposited in many cases. And part of the reason we know that is because of the nature of what's actually in the file before the agency in any one of these cases. So, each of the redeterminations that went to a hearing, went to a hearing because there wasn't enough evidence left in the file to show that the beneficiary was disabled after throwing out the evidence submitted by the con-affiliated doctor. So, in Jackson's case, the agency threw out, as I said, both the residual functional capacity form and the underlying report of Dr. Huffman's medical examination. And so, at that point, the file contained a report of the consultative examiner obtained by the agency, which generally concluded that the individual was not sufficiently disabled to qualify for benefits. And to counteract that report, you have to have your own medical evidence. I think you all appreciate that it's difficult, if not impossible, to retroactively develop medical evidence. And that is particularly true here, where large swaths of medical evidence were destroyed by con or confiscated by federal investigators. But even setting that aside, you can't go to a physician today and ask whether someone examined today was disabled 5 or 10 years ago. It's a complicated situation. And there's a key Seventh Circuit decision, actually, about Judge Flom, that I think speaks specifically to the due process issue that's presented here. And that's the Kekmarcha INS case. Counsel, decisions of the court speak for the court. They are not opinions of Judge Flom. They're opinions of the Seventh Circuit. Of course, Your Honor. I apologize for misspeaking. So if you look at Kekmarcha's INS, their report held that the due process clause of the Fifth Amendment required that petitioners, there they were immigration petitioners, be allowed an opportunity to rebut officially noted facts, particularly when, as a misuse, those facts are crucial to, and be dispositive of, the outcome of the administrative proceeding. And I think that decision of the court is directly relevant here. Because of the dispositive nature of the evidentiary exclusion that occurred before the agency. Ms. Jennings, could you repeat the name or give us the citation of that case, please? I didn't hear it clearly because of the phone. Thank you. Oh, yes, of course. So it's Kekmarcha versus INS. And the citation for it is 933 S. 2nd, 588. Thank you. And the PIN is 596. Thank you. Okay, Ms. Jennings, you have a grand 40 seconds left. If you want to make your comment. Well, I think if the panel has no further questions for me, I will rest there. We request that you hold that the SSA's procedure violated due process and the APA's formal adjudication requirements. Thank you, Your Honor. Thank you, Ms. Jennings. Anything further, Mr. Fulham? I will give you an extra three minutes. Thank you. Yes, I'd like to respond to a few points. There were some questions about what exactly Mr. Jackson would do with his additional procedures. In his brief, he specifically indicated that he pointed to the procedures that were suggested by Judge Sipar, which did involve cross-examination on the due process claim of an OIG agent. I think that could be extremely burdensome to do, and we have to balance that against the benefit of how this would mitigate the risk of error. And I don't think it would here. And I point the court to the Supreme Court's discussion of a similar issue in Cayley, where the court said, you know, looking, it pointed specifically to the standards that applied, which there was probable cause, which is roughly equivalent to our reason to believe here. And the court said, basically, we didn't think that this procedure would be useful in correcting erroneous deprivations, because that standard is easy to meet, hard to displace, and can be reliably made without an adversary hearing, including having— What are probable cause—excuse me, Mr. Fulham—what are probable cause determinations conclusive on the issue? Well, they can have consequences. They're not conclusive on the deprivation— And that's why you might be able to suspend benefits, for example. We're talking here about permanent termination in a conclusive resolution, so I don't see how that really helps you very much. Well, because the reason to believe didn't—benefits weren't terminated on the basis of reason to believe. Benefits were terminated based on the overall case record and whether it established disability. And I'd like to point out that when Ms. Jennings spoke about evidence that was available, Mr. Jackson had a considerable amount of evidence regarding his medical condition at the time. It included all of the records that SSA had developed during the early administrative procedures, two consultative examinations, x-rays taken at the time. So it wasn't as if Dr. Hufnagel's report were the only evidence that was available to him. There was quite a bit, over 100 pages of evidence of medical records in the file. And that's, you know, putting aside all of the other evidence that he offered. So when we're talking about kind of what was available to base a decision on, there was quite a bit that was already there. The SSA procedures are designed to, and they're required to, develop a complete medical history of the applicant's condition at the time of the application. And that was done in this case as in all cases. So I think just because there's no reason to believe that, openly the goal here is to get in evidence that was signed by someone who had been implicated in a fraud, submitted by a doctor, or excuse me, by an attorney who's been convicted of a fraud. There's no reason to believe that submitting this evidence will make the proceedings any more accurate. Indeed, they may undermine confidence in these procedures, which is an important government interest because of the size and the burden that this program imposes on all taxpayers. Everyone has to contribute to Social Security. Mr. Pullman, thank you. Your time, you're about a minute over your time, so thank you. Thank you very much. We ask that the district court's judgment be reversed. Thank you, counsel. The court will put this appeal on hold for 14 days to give the parties time to go back to the district court and ask it to enter a self-contained judgment, providing the relief to which the prevailing party is entitled. Once that has been done, the party should provide this court with the revised judgment, together with statements about how they believe those changes affect the pending proceedings in this court. Okay? Let us see if we can get this fixed. Yes, Your Honor. Thank you very much. All right. Thank you. When that is received, the case will be taken under advisement.